Good morning, your honors. May it please the court. I'm Everett Lupton. I'm here on behalf of the estate of Sally Copeland Evans, Mitchell Evans administrator. We're here today and I intend, based on the courts, the limited time I have to address several issues. One is primarily the basis of the district courts granting the United States' motion to dismiss on the 12B1 grounds specifically. Specifically that there was not an independent tort based on Sheridan, Durden, Lumsford, those specific ones that would be independent of the assailant's governmental status. And then also the court sent a one page memo asking us to address the Kearns and the Rivanna decisions, analysis of Evans v. Bivens based on a facial challenge I believe versus a factual challenge by the government, I think is what the court's memo. So I'll try to address that also. Judges, your honors, this case is very fact specific. And the reason I say it's very fact specific is because there are a lot of facts pled in the complaint by the plaintiff in this case. And the basis of the district court's dismissal of the action was the intentional, basically intentional tort exception that the district court held that there was no basis for liability independent of the tort fees or in this case Caesar's status as a marine, I believe is what we're getting down to. And there is. And specifically the focus and the question here is whether or not specifically there was an independent tort basically, meaning that whether or not Smith, who was the captain, assumed a duty that would give rise to a cause of action in North Carolina state law specifically and allow that cause of action to proceed forward. And we believe there is based on the reasons submitted in the briefs. But going back to the independent status, and I'm going to distinguish a little bit from the facts in Durden because this court made a decision in Durden, it's pending in 2013. The facts in this case, as alleged by the plaintiff in the joint appendix in the complaint, is different from the facts of Durden. There is a specific affirmative action in communication in this case between Captain Smith and the victim, the deceased Sally Copeland Evans. There's a series of communications between Captain Smith and Ms. Evans and Mitchell Evans and Monica Evans as noted in the complaint set out in the facts of the case. I believe in Durden, I may be wrong, Judge, my recollection of Durden is that there was an allegation against the Army specifically in this case that they failed to fail to keep the victim safe. But I don't remember there's any specific communications between the Army and the victim here. And it was regarding the Army's policies on the base. But what we have here is obviously a Marine captain, obviously a Marine, but the Marine has gone absence without leave. I think it's not AWOL, but it's some other military term there specifically. And what the actions that Caesar did in, you know, killing Sally Copeland Evans was not within the course and scope of his duty. So the facts of the case that we have here are analogous and similar more to the Sheridan case as opposed to the facts in Durden specifically with the case. And the reason I say that, Judge, is if you look at, Your Honors, if you look at the complaint here specifically, nothing in communicating with, or excuse me, when he killed Sally Copeland Evans, Caesar was not doing anything with the Marines. He was actually away from duty station. His detachment was in Fort Benning. He had left and gone back to North Carolina. There was nothing that he was doing for the Marine Corps there in the course and scope of his employment for the Marines specifically. And this is a tortfeasor, meaning the, when I say tortfeasor, I mean the assailant, because it's obviously a claimant. Isn't the issue whether or not you could make this claim that Commanding Officer Smith should have done more to go get him or intervene if he was not a serviceman? Could you make that claim? Yes, you could, Judge. So what, under what duty, what role, how would the Commanding Officer have any duty to go assist this awful situation if Evans was not a serviceman? Because, and that's the court bringing that up, it's the same situation as in Sheridan. Essentially, there is a course of conduct where Smith, the Commanding Officer, is acting, you know, he calls and reaches out to Sally Copeland Evans, telling her that there's an allegation of fraud, I believe, and that he's brought this note, and there's other stuff similar to the facts in Durden, Judge, Your Honors. But, the issue, the heart of the issue of the plaintiff's complaint, which makes this different from the facts of Durden, is the actual one-on-one phone calls and communications between Captain Smith, the Commanding Officer, and Caesar, after Smith says there's nothing else the Marine Corps can do in this case, specifically, he says that in the complaint. And again, based on the Kearns case, and also Rivanna, I think of Riva from Rappahannock, but it's Rivanna's case, based on the facts of that, the facial challenge, the government is essentially accepting the facts as they are. So essentially, it's, and the Adams versus Bivens case, I mean, we have to look at it from the standpoint of the facts, most light, most favorable to the plaintiff. So, although there's obviously information and there's course of conduct with the Marine Corps relationship, and that's set out in the complaint, and even in this court, and Durden says that in itself, and reversing the district court, and Durden, the district court, specifically, I believe, you know, they were citing Lumsford case, which is Eastern District, North Carolina, to say that the fact that he had superior knowledge or information from his Marine Corps involvement is not in itself, you know, a bar in the ITE. Sure, sure, but he's got to have some duty to intervene. Right. And what law, what case, what concept, what doctrine would apply to this situation if Mr. Evans was not a serviceman? Okay, and that's the case. It's a good Samaritan's when... It's a good Samaritan law because you started, you got a duty to be ready. Correct. So, North Carolina law, I'm sorry, I apologize. That's okay. North Carolina law, and my time is limited, so I'm trying to get through. But North Carolina law follows the restatement, second restatement of torts. If someone undertakes a duty, they have a duty to fulfill and follow through with that specifically. In this case, Caesar specifically undertook the duty after he'd done all this with the Marine Corps thing. He specifically tells Evans, Sally Cookland Evans, to put him in a vehicle and transport him to a certain place, knowing that he's a danger, knowing all the information provided by Mitchell Evans and Sally Evans, knowing all these facts and information specifically. So, he basically takes on... What should he have done? I'm sorry? What should he have done? He should not have told her to put him in a car and try to drive him somewhere knowing the red flags. He didn't have to do anything, necessarily, and that's the whole point. If you look at the Durden case, essentially, that's the argument that there wasn't. I think the allegations in Durden was that the Army did not... Isn't the thought that if he gets to a military branch, maybe, or military situation, maybe there can be some protection? That's what the family wants, and he's saying, you know, maybe so, but, yeah, we can't do any more? The road to hell is paved with good intentions, Judge. The road to hell is paved with good intentions. All I'm saying, what I mean is, his intentions, I don't say, necessarily, Captain Smith's intentions were not bad. The problem was, is that when he undertook this duty with superior knowledge, with these red flags, that Caesar had grenade parts, that he had these guns he was talking about, and also the superior knowledge that he had as his commanding officer when he was at Benning with the notes and everything else, that he then undertook an independent, assumed a duty... Does he have to have superior knowledge? Doesn't have to, but he did. I thought the guns and the grenade stuff came from the family. It did, that part of it. Yes, Judge. You're right, correct, Judge Kwan-O-Bong. But the fact that he had red-lipped a suicide note, the fact that he was a danger to him and others, those were things that, according to allegations of the complaint, that the Captain Smith already said to, or told, when he called out first, according to the complaint, and spoke to the decedent and the Evans family. He conveyed that information earlier to the family. Yes, sir, he did. He did. So they had the same knowledge. Well, suppose they had the same knowledge. However, again, the issue is not necessarily... The question is whether or not Smith assumed a duty under North Carolina law. In other words, by telling him to put here in the car. And that's the key distinction in this case. And that's why I said it's very fact-specific. If it was just a general, like, allegations of negligence, like it was in Durden, which is kind of what it is, the allegations were that the Army, I think the CO, had put him on restrictions on base, the assailant, before he committed the rape, that he wasn't allowed to leave the base without permission, things like that. But there was no direct communication and no direct direction between the government agent, in this case Captain Smith, and the victim, Sally Evans Copeland. Which in this case, again, taking the government's position, at a facial challenge as opposed to a factual challenge, they assume these facts are correct for purposes of this hearing and motion. So looking at those facts, they specifically convey, or I should say, establish a prima facie case of assumption of a duty and then specifically with foreseeable risk. That's another issue that was talked about in, I believe, Sheridan. Foreseeable risk and harm to the victim is, and John, I'm sorry, on this slide, does this mean I have four minutes including rebuttal or is this four minutes left on principle argument? You have four minutes left on the principle argument. I'm sorry, I just want to make sure. I apologize. Thank you. So and that's the difference here in this case specifically, between this and Durden as far as the facts between the two. Now, again, this is kind of like the Sheridan case. Caesar's status as a Marine in this case, particularly this allegations, at the point of when the information is communicated between Mitchell Evans, Monica Evans, and Sally Copeland Evans back with Captain Smith, his status of Marine really doesn't matter at that point because it's irrelevant. It's based on information that he's gotten, specifically guns, grenade parts, you know, all these things as Judge Qualabong, you mentioned that, you know, that you said the family conveyed those to Captain Smith. Now, I'm not saying that Captain Smith didn't have other information because clearly he did based on the interaction at Benning, at Fort Benning when he had the suicide note, when he found that and the fact that he was committing, I don't think fraud has anything to do with this. It's not, this is a murder, a case of murder, you know, killing by the assailant. But with these facts, it's enough specifically that the District Court erred in dismissing this under 12b-1. And it's really something that, you know, further discovery is needed. Now, again, we get back to, you know, as the court's holding in Durden specifically, where it looked at, I believe several different factors as court. It said, you know, no special relationship outside the military, Marine, military commanding officer, Marine situation. But the big difference, again, is in Durden, there was no assumption of a duty found by the court on those facts, I believe, under North Carolina law, if I recall correctly. I think that was the last part of the argument that Durden made in this court. So you can see the special relationship wouldn't be an avenue for you because that would be military, right? Candidly, Judge, yes, sir. Your argument hinges on there being in the complaint evidence that he had sufficiently assumed a duty. Yes, sir. And that that assumption of a duty has no relationship to his role in the military. If he was taking him somewhere to where he didn't want to go, the information when he assumed that duty was based upon information he had gotten from the family, the guns, the grenade parts, explosives, the parts, and all the information specifically, red flags that were about, it would be the same thing. Can I stop you? I won't let you finish that. But was your answer to my question, yes? I'm sorry. Yes, sir. The question, I believe, was yes. I think you said yes and then you went and tried to explain why you think you did that. Yes. And I apologize. No, no, no, I just wanted to make sure we're on the same page. Yes, sir. Yes, sir. So, and again, that's the specific difference between here. Suppose he was being taken somewhere other than Lejeune. Lejeune just happened to be the place he was taken. Suppose he was, and the information given, he was taken to the police station or to a psychiatric hospital or somewhere else. The point is, is that he assumed a duty when he told Sally Copeland-Evans to put him in a car, knowing all this information, having received it from the family and also as his commanding officer, and told him to put her in a car and take her to, specifically in this case, to Lejeune. And I'm limited on time. Very quickly, going to the Kearns case, because I did indicate I'd try to argue that briefly, Judge. I'm not trying to cut this short of questions, but the Kearns case specifically is a facial challenge. So the question is between, I think that was the court's memorandum of question to us, the parties, were to address whether or not it's a facial challenge versus a factual challenge. And so the Rivanna case and the Kearns case specifically, the question is whether the jurisdiction becomes so entwined with the facts of the case that further discovery is needed, or whether or not, you know, it's kind of like a 12B6 motion instead of a 12B1 motion on those cases. I think that's the court's question. And I will say that the government tactfully have pretty much made this a facial challenge, not a factual challenge. If that answers the court's question, as far as it's conceded the facts of the complaint is true for the purpose of jurisdictional determination. And they're basically arguing that even with the facts pled, that it does not provide jurisdiction under the federal torts claim. I see my time is up. Thank you. Thank you, Mr. Lipton. Ms. Wilson. Assistant United States Attorney Sharon Wilson, I have reserved five minutes to address the 12B1 question posed by the court. And we agree that basically the district court appropriately processed this claim because the concern in 12B1 is that the plaintiff should have some procedural protections. And when there is a facial challenge as the government offers, 12B6 is the appropriate standard to apply. And the district court did that here. So if you're conceding the facts to be true, as I understand you're doing, we kind of look to merits-based law in the sense that you would typically do with a 12B6 situation. But that analysis affects whether we have subject matter jurisdiction, correct? Correct. So is the court... Go ahead, I didn't mean to cut you off. Oh, no. I just want to make sure... So is the proper vehicle for a district court in a case where you're accepting the allegations of the facts as true and say even doing so there's no exception under the Torts Claims Act? And to do so, you have to go into the substantive law to do that inquiry. Should the dismissal be a 12B1 dismissal or a 12B6 dismissal? Well, in Brownback v. King, 141 Supreme Court, 740, on 748 and 749, they talk about the interplay between 12B1 and 12B6. And in that case, there are six elements under 1346B1, the subject matter jurisdiction for this court. And they were talking about element number six, which is basically the merits of the claim. The plaintiff has to show that the government would be liable like a private person. Here, we don't really have that. What the court did below on 12B1, we were dealing with an exception, the intentional torts exception. So she looked to the statute itself, 2680H, and it says arising out of assault and battery. And Sheridan talks about what it means and how you apply Sheridan. And the Sheridan court's response was, well, let's take another type of person, say a banker or a civilian. So the question here that the court was posing was how to properly process. And here, it was appropriately processed. Plaintiff received all the protections he was entitled to because the court indeed, in assessing 12B1, assessed it under 12B6. Okay. So, and I'm not sure, is it, you mentioned that this is under the intentional torts exception. Correct. And that would maybe militate towards it being 12B1. And the further substantiation, I forget which one it is, to the extent you'd be liable under state law, might be, would that be, if you were under that, would it be more like a 12, it seems like it's a 12B6 sort of situation, that informs subject matter jurisdiction. Right. It depends on how the plaintiff brings the claim. And here, the plaintiff always has the burden to demonstrate their jurisdiction. And under the Federal Tort Claims Act, it's 1346B1, and they have to prove all six of the elements, the sixth being that we are liable in tort, like a private person. But here, what we're saying is, it's a threshold issue. Before you're even getting there to 1346B1, you have to look to see,  under the Federal Tort Claims Act 26, 2671 at SAC? And here, the exception, the threshold issue, the Congress has decided that it would carve out, even though it would waive for certain generic torts, it would carve out the string site of torts in 2680H. And that's really what the court did here, never reached the merits of what would have been a claim under 12B6 under element six of 1346B. I'm about out. May I address the processing claim, or may I introduce? We are so pleased to have the opportunity, the professional development opportunity. We have with us today, Madison Dunbar. She's a 3L at Duke, and she is going to defend the substantive elements. Ms. Dunbar? May it please the court, Madison Dunbar on behalf of the United States. As my colleague correctly pointed out, this case should be dismissed as it was below on the 12B1 lack of subject matter jurisdiction grounds. First, if we substitute any private person for Caesar in this case, the Marines would not be held liable. There's no facts pled, no duty, no law that tell us Captain Smith should have done something if Caesar was a private citizen. The second issue I'll address is applying North Carolina law, there's no assumption of a duty to protect here. So first, under the 12B1 issue, the United States enjoys sovereign immunity, and it deprives the court of subject matter jurisdiction here. Under the FTCA, the US could be held liable for certain claims, but only to the extent a private person is. However, if the facts pled showed there was a theory of liability completely independent of the tortfeasor's status as a government employee, then sovereign immunity could be waived, but that is not the case here. Caesar's employment status is completely at the heart of this case, and the Marines' ability to control him was dependent on his status as a Marine. The theory of liability in this case arises out of his status as a government employee. Our case is distinguishable from Sheridan and Lumsden. In Sheridan, three Navy corpsmen in a Navy hospital found, then abandoned, another drunk Navy corpsman possessing a rifle. The government was held liable in that case. The government could be held liable because if you substitute the drunk person for a private actor, either way, they had a duty there to report the drunk person with a gun, and they had control over the situation as they were on a Navy installation. The theory of liability was independent of the tortfeasor's status as a government employee. In Lumsden, a Marine corpsman, Borges, was known by other Marine corpsmen to inhale ether, and he was detained and his car impounded. Later, other Marine corpsmen returned the vehicle to him with the government's ether still in the car, and then he went on to inhale the ether, drive, and get in a car accident that killed someone. The government was held liable because there, if you sub a private person for the tortfeasor, the government could still be held liable. And the theory of liability was completely independent of the tortfeasor's status as a government employee. This claim in our case arises out of the employment status, so there's no subject matter jurisdiction here. Does the court have any questions on the 12B1 issue? I just have one question, because I know counsel's gonna, I believe stated or will bring it up, this whole issue of him, Captain Smith, when he says that the Marines can do no more, and then he goes on to say, well, let me see what I can do. Yes, Your Honor. I'll address that more under what I'll talk about next with in relation to Captain Smith's possible assumed duty. I'll argue that he didn't assume a duty to protect, but if it's all right, I'll address that there. So yeah, now turning to that second 12B6 issue, there's a few ways under North Carolina law that duty could be established. My colleague conceded that there was not a special relationship that we could rely on here, and generally in North Carolina, there's also no duty to protect others from harm against third persons. Additionally, there's no support under North Carolina law that an employer, upon request from an employee's family, has a duty to retrieve their employee from a private residence. So again, there's no real relation to a private employer here. So that leaves us with an assumption of a duty to protect by Captain Smith, but there just isn't that assumption here. North Carolina courts generally require affirmative conduct before finding a voluntarily assumed duty, and I have a few examples of what that might look like in other cases. For example, in Davidson v. University of North Carolina, UNC Chapel Hill sort of stepped up and tried to advise campus cheerleaders on safety and other issues, and they did that proactively. There was nothing forcing them to do that, and then ultimately, when a JV cheerleader was injured, UNC Chapel Hill was held liable because they had never relayed any sort of safety measures to the JV cheerleaders, only the varsity cheerleaders. Another case is Bowles, where a shooting victim alleged that the Coast Guard, through its employees, knew of the shooter's mental health issues and even encouraged the shooter to store his weapons in the firearms armory on the base. They later gave the weapons back to him despite knowing about a protective order in place, and in that case, the government was held liable because they took those affirmative steps, such as requesting that the Coast Guard member store his guns on base. Additionally, in the Chang-Williams case, there was a affirmative action, a promise to a victim and her family to keep her safe from a government tortfeasor, and again, that rises to the level of an assumption of a duty because there's that affirmative promise. And finally, in the Doe case, this was a case involving sexual assault, sexual abuse of four minors, and for three minors, no assumption of a duty was found, but for the one minor where a school counselor promised the mother, I'm gonna get this taken care of, I'm gonna deal with this, there was an assumption of a duty to protect found and the government was held liable. So I would just distinguish those four examples from our case where none of the steps that Captain Smith took were an affirmative step to protect the decedent or other members of the decedent's family. It was always the family reaching out to him and him responding, and he was just doing the best he can with a family dealing with a crisis, but at no point in time did Captain Smith assume a duty to protect the family. And relatedly, we can't talk about this assumption of a duty without talking about foreseeability, and plaintiff also needed to show that Captain Smith knew or should have known that Caesar posed such a danger to the decedent, and the facts pled here just do not rise to that level. The facts pled were that Caesar was living with his family for three weeks, twice they drove him to the airport, these were extended drives about an hour and a half and there was no violence on those occasions, and each time Caesar returned to his family. Counsel, is the foreseeability argument of the weaker of your arguments? I mean, there's a good bit of information. You know, he knows information that he had when Caesar was at the base about ending it. I think there's, as alleged, they talked about hurting others. Once he's getting there, there's the information about guns and grenades and things. It seems to me, foreseeability may be the weaker of your arguments, but even if there's this pled foreseeability, you still have to show the assumption of a duty. You agree with that? I agree. That's two questions. So you probably don't agree with that. I think it's weak, but I mean, if you'd respond to my question about foreseeability and then address this question, which is even if there is foreseeability as alleged, how that relates to your argument that there's no assumption of a duty. Yes, Your Honor. So I agree with you answering your second question first, that the plaintiff would need to show foreseeability in addition to this assumption of a duty, and I don't believe the foreseeability argument is weak. I think though there was pretty clear evidence, that Caesar had suicidal ideations and maybe at some point posed a danger to others. It just gets too attenuated with the passage of time and the distance here. It had been three weeks since Captain Smith first discovered the note with suicidal ideations, and there had been a lot of time and opportunity for more information to come out about facts that there was a specific risk to the family, but there were no facts fled that the family ever locked Caesar out, ever called local law enforcement themselves, ever restricted his access to the decedent or even supervised his access with the decedent or had someone else drive him to the airport. So there's just not enough facts fled there to prove Captain Smith knew or should have known that Caesar posed a danger in this way. That concludes my argument, unless anyone has any questions. Thank you. Thank you very much. Yes. Let me start in rebuttal, Your Honors, with specifically affirmative conduct. Judge Qualibon, your last question to opposing counsel was essentially about the foreseeability and the assumption of a duty. And counsel's one of her response was specifically the amount of time that elapsed between the time that he left Benning to come to North Carolina based on the allegations that's shown in the joint appendix as far as the timing. The amount of time between the time, the last affirmative conduct in here, when it's part of when you assume the duty and the victim's death was the same day. I mean, we're talking about the last time looking at the complaint, allegations of the complaint taken as true, factual for the purpose of this case, I believe it was on the 24th of April, he has a communication with her and says, put her in the car again, take her to this place, and is the same day in time, approximately the same day that she shot, either the same day or day thereafter when she's shot and killed specifically on the last day. That's based on the allegations of the complaint. So again, that's the difference here between the Durden case and specific facts of Durden and this case where he did assume a duty. She mentioned the Davidson case, Davidson versus University of North Carolina. The Davidson case specifically laid out North Carolina, I think it's either a Court of Appeals case, it was a firm, either North Carolina Supreme Court or Supreme Court, I don't remember which one. But anyway, it's still valid law to argue to court. And the Davidson court specifically differentiated between the special relationship situation with the cheerleaders and the school and assumption of a duty. In the Davidson court, they found liability in both situations, specifically in this case, but it was in two different theories. So there's a different theory between special relationship and assumption of duty under North Carolina law based on what the Davidson case lays out. Specifically, she mentions that, again, if you look back at Sheridan, the situation here is not about the intentional conduct of Caesar. The question is whether or not, just like in Sheridan, whether or not Captain Smith in this case assumed a duty under a good Samaritan type liability here where he specifically says, knowing that you've told me about the grenades, knowing that you sent me text about, excuse me, the grenade parts, I apologize, not grenades, I misspoke, knowing that you sent me text about grenade parts, knowing that you sent me these pictures of these firearms and I hope they came through the joint appendix and it was kind of a photocopy, but it's clear pictures of those items that was sent. The complaint specifically, and going to an Iqbal standard, I mean, the complaint gives very specific facts to show that foreseeability, as Judge Quattlebaum, you mentioned about the foreseeability here, but beyond that, he assumed a duty and the evidence in the complaint that he assumed a duty are those multiple affirmative conduct communications that he had back and forth as alleged in the facts of the complaint. But every communication that he had is after the family is saying, can't you pick him up? Can't you bring him to Lejeune? Can't you take him to the police? They're appealing to his commanding officer as a military person based on his position. He's saying, we can't do that. And he says, if you get him here, you know, he does say, you do allege, he says, bring him to Lejeune. They're doing that, and it sounds like, as you allege it, or as is alleged in the complaint, that that's the most they can do in the circumstances. And to turn that into a, that's an affirmative duty, and you got to do anything reasonable after that, and it doesn't have anything to do with his military status, just seems like that's a tall order. Well, let me, can I address that if I could? That's why I asked it. Thank you. Sorry. So the issue here, and I may be splitting hairs, but the law kind of splitting hairs on this, and I use that phrase not in tongue in cheek, but specifically, and Sheridan talks about this, and so does Durden specifically, and Lumsford, the fact that he has, that the tort is in some way connected to his military knowledge of tort pieces, propensity for violence, criminal history, gains, results, and status, and talking about the fact that he has, is part of the military as far as the communications up until that time. You have a clear distinction in the complaint facts between where he says, and as Judge Benjamin, you mentioned specifically, I was going to mention, and I will, that he says the Marine Corps can't do anything else, and then he goes, and after the communications, says, you know, after knowing this stuff, put him in a car and take him someplace he doesn't want to go, that he should have known that he didn't want to go, knowing he was in danger, knowing what's in the media is termed a lot as red flags. I mean, there are a lot of red flags here that Captain Smith, Judge Qualopon, knew, and should have, as a reasonable person, taking that good Samaritan statute. Now, his course and action was still within the scope of his employment, Captain Smith, because he is a Marine officer. I see my time is up. Can I finish? You may finish. Thank you. But again, it's that assumption of the duty in a North Carolina law, which there's plenty of, I believe, support based on North Carolina law for that fact that brings it independent. Thank you for your time, Your Honor. Thank you for your attention, and again, appreciate being here. This is one of the nicest courthouses I've been in. Thank you for your argument, and all counsel, and we'd like to recognize that we have student counsel before us. The Blue Devils were well represented. But I do know that you did set a case with UNC in it. It was quite painful. It was really good, but painful was it. We'll come down to Greek House and then take a brief recess.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., DeAndrea Gist Benjamin